UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHERSON, KLEIN & DARBINIAN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> JPMORGAN CHASE BANK, N.A., et al., <br><br> Defendants. | Case No. 2:23-cv-06543-SSC <br><br> MEMORANDUM AND ORDER |

This Administrative Procedure Act case involves the Paycheck Protection Program passed by Congress as part of CARES Act, which expanded the Small Business Administration's lending authority and established a new loan program for small businesses impacted by the coronavirus pandemic. A law firm and its partners challenge an administrative decision concerning forgiveness of their loan. Before the Court are cross-motions for summary judgment based on the administrative record.

The Court finds that the agency's decision was not arbitrary, capricious, an abuse of discretion, or contrary to law. Accordingly, Plaintiffs' motion for summary judgment is **DENIED**, and Defendants' motion for summary judgment is **GRANTED.**

# I

## A

Under the section 7(a) loan program, the Small Business Administration (SBA) "is empowered . . . to make loans to any qualified small business concern." 15 U.S.C. § 636(a). The SBA may make section 7(a) loans "either directly or in cooperation with banks or other financial institutions through agreements to participate on an immediate or deferred (guaranteed) basis." *Id.*; *see also* 13 C.F.R. § 120.440 (criteria for private financial institutions to "obtain delegated authority" to make loans under the section 7(a) program).

In response to the outbreak of COVID-19, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. No. 116-136, 134 Stat. 281 (Mar. 27, 2020). Among other things, the CARES Act made $349 billion in emergency loans available through the Paycheck Protection Program (PPP) to be administered by the SBA. *See id.* §§ 1102, 1106. Under this program, the SBA guaranteed loans made by approved lenders, such as JPMorgan Chase Bank, N.A., (Chase). *See id.* § 1102. "Eligible businesses that used the loan primarily to cover eligible payroll costs, interest on mortgage obligations, rent under lease agreements, and utilities during the covered period would see their loans forgiven so long as they kept their workers employed through June 2020." *Happy Puppy LA, Inc. v. Bank of Am.*, No. 2:23-cv-01354-JLS-PD, 2023 WL 6192702, at *1 (C.D. Cal. June 30, 2023), *motion to certify appeal denied sub nom. Happy Puppy LA, Inc. v. Bank of Am.*, N.A., No. 2:23-cv-01354-JLS-PD, 2023 WL 6787778 (C.D. Cal. Sept. 27, 2023).

2

**B**

On May 9, 2024, Plaintiffs filed the operative first amended complaint (FAC). (ECF 55.) The FAC brings against defendants Isabella Casillas Guzman, Administrator of the SBA; Janet L. Yellen, Secretary of the United States Department of the Treasury; and the United States of America, (collectively, Federal Defendants), an Administrative Procedure Act (APA) claim, alleging that, in denying full forgiveness of their PPP loan—forgiving only $89,044.96 of the $214,162 lent—the SBA acted arbitrarily and capriciously.[1] (ECF 55 at 21.)

**C**

The parties agree on the facts as presented in the certified administrative record, which show the following.

On April 7, 2020, Plaintiffs applied for a PPP loan using Chase's online portal. (ECF 68-4 at 61–63; ECF 68-9 at 287.) On the Borrower Application Form 2483,[2] Plaintiffs certified that the borrower, Asherson, Klein & Darbinian, was a business with six employees and an average monthly payroll cost of $85,665. (ECF 68-4 at 62; ECF 68-9 at 287.) The form directed the applicant to multiply that number by 2.5, yielding a total loan amount of $214,162 on Plaintiffs' application. (ECF 68-4 at 62.) The loan was approved for that amount, and the SBA disbursed the loan to Plaintiffs through Chase. (ECF 68-4 at 58; ECF

---

[1] Chase, and the five counts brought against it in the FAC, have since been dismissed from the action. (ECF 61.)

[2] The administrative record reflects that, "[t]he attached 2483 was not filled out by the PPP Borrower in such format. Rather, the attached 2483 is a system-generated document created by [Chase] using the PPP Borrower's responses from its/their digital PPP loan application. Those responses were captured and stored in [Chase] systems and used to populate the fields that appear in the attached 2483." (ECF 68-4 at 61.)

3

1  68-7 at 131.)  In December 2021, the SBA remitted to Chase the total
2  amount of the loan to purchase the guaranty.  (ECF 68-4 at 58; ECF 68-
3  7 at 131.)
4        On August 2, 2023, after multiple attempts, Plaintiffs filed a PPP
5  Loan Forgiveness Application Form 3508EZ.[3]  (ECF 68-4 at 66–68; ECF
6  71 at 7.)  They reported their payroll costs for the covered period of May
7  1, 2020 through October 16, 2020, as "156000.00" dollars and listed
8  other eligible costs, for a sum total of "247,977.67" dollars.  (ECF 68-4 at
9  66.)  The forgiveness application provided that the potential forgiveness
10 amount would equal the lesser of the calculated number, the PPP loan
11 amount, and the payroll cost 60% requirement.  (*Id.*)  Because the
12 $214,162 loan was the lesser of the three, this was the operative
13 potential forgiveness amount.  (*Id.*)
14       Thereafter, Chase submitted to the SBA a recommendation for
15 forgiveness of the full amount of the loan.  (ECF 68-2 at 10.)  But, in a
16 final loan review decision, the SBA "determined that the borrower was
17 ineligible for the PPP loan amount received."  (ECF 68-7 at 178.)
18 Specifically, Plaintiffs had reported "$85,665" in average monthly
19 payroll costs[4] (ECF 68-4 at 62), which, multiplied by 2.5, had rendered

---

[3] In the application, Plaintiffs certified that that the business had four employees at the time of both the loan and forgiveness applications.  (ECF 68-4 at 66.)  The Court notes a discrepancy between this representation and Plaintiffs' certification in the loan application that the business had six employees.  (*Id.* at 62.)

[4] Under the statute, "payroll costs" include only "the sum of payments of any compensation with respect to employees that is a . . . salary, wage, commission, or similar compensation"; "payment of cash tip or equivalent"; "payment for vacation, parental, family, medical, or sick leave"; "allowance for dismissal or separation";

4

the loan amount of $214,162 (ECF 68-4 at 62; ECF 68-9 at 287). The SBA explained that Plaintiffs' supporting documentation reflected, however, "$132,884.64 in gross wages," a "net self-employment earning for two partners capped at $100,000 each in the amount of $200,000,"[5] "employer contributions to health benefits are calculated to $17,877," "$79,861.17 in employer retirement contributions," and "$1,113 in state unemployment insurance and employee training taxes." (ECF 68-7 at 178.) Thus, "2019 payroll costs aggregate[d] to $431,735.81," amounting to an average monthly payroll cost of $35,977.98. (*Id.*; ECF 72 at 19.) Multiplied by 2.5, this average produces what the SBA found to be "a maximum eligible loan amount of $89,944.96." (ECF 68-7 at 178.) Having already purchased from Chase the guaranty for the loan in full, the SBA notified Plaintiffs that "the SBA-approved forgiveness

---

"payment required for the provisions of group health care or group life, disability, vision, or dental insurance benefits, including insurance premiums"; "payment of any retirement benefit;" or "payment of State or local tax assessed on the compensation of employees"; and "the sum of payments of any compensation to or income of a sole proprietor or independent contractor that is a wage, commission, income, net earnings from self-employment, or similar compensation and that is in an amount that is not more than $100,000 on an annualized basis . . . ." 15 U.S.C. § 636(a)(36)(A)(viii).

[5] For a sole proprietor or independent contractor, payroll costs include "the sum of payments of any compensation to or income . . . that is a wage, commission, income, net earnings from self-employment, or similar compensation and that is in an amount that is not more than $100,000 on an annualized basis . . . ." 15 U.S.C. § 636(a)(36)(A)(viii). And payroll costs "shall not include . . . the compensation of an individual employee in excess of $100,000 on an annualized basis, as prorated for the period during which the compensation is paid or the obligation to pay the compensation is incurred[.]" *Id.*

5

1  amount [of $89,944.96] w[ould] be applied to reduce the outstanding
2  amount of the loan owed by the borrower." (ECF 68-4 at 58.)
3      On administrative appeal, the OHA affirmed the final loan review
4  decision. (ECF 68-9 at 280–95.) Initially, the OHA noted that Plaintiffs
5  made "no specific arguments as to why the SBA's calculation of average
6  monthly payroll as determined in the [final loan review decision] is
7  erroneous" and did not "provide evidence of how [Plaintiffs] obtained
8  the calculation to support the PPP loan amount of $214,162.00." (*Id.* at
9  293.)
10     The OHA then rejected Plaintiffs' "argu[ment] that the lender, not
11 the borrower, calculated the PPP loan amount upon receipt of
12 supporting documentation." (*Id.* at 290.) Rather, explained the OHA,
13 Plaintiffs were "required to fill out the PPP [l]oan application form, as
14 certified by the initials and signature of Anna Darbinian on [] behalf of
15 [the law firm]," and Chase was "permitted to rely on the certifications
16 and attestations" made by Plaintiffs. (*Id.* at 291–92.) And "it [wa]s the
17 Borrower's **obligation** to adhere to the terms of the PPP Loan
18 Program" in calculating and certifying eligible costs. (*Id.* at 292
19 (emphasis in original).) The OHA cited in support the first Interim
20 Final Rule (IFR) promulgated by the SBA to implement the PPP, which
21 states, in relevant part, "SBA will allow lenders to rely on certifications
22 of the borrower to determine eligibility of the borrower . . . . Lenders
23 must comply with the applicable lender obligations set forth in this
24 interim final rule but will be held harmless for borrowers' failure to
25 comply with program criteria." (*Id.* at 292 n.3 (citing 85 Fed. Reg.
26 20811-01, 2020 WL 1865030, at *20812 (April 15, 2020)).)
27     The OHA then summarized the root of the discrepancy as follows,
28

6

> [Plaintiffs'] initial calculation for the total eligible amount for the PPP loan at origination was incorrect by including ineligible expenses in the calculation of average monthly payroll. Borrowers and Lenders are required to calculate the maximum loan amount utilizing 2019 IRS forms and payroll documentation. Non-payroll costs are not considered in calculating the maximum eligible amount. Those expenses are accounted for in the forgiveness process to ensure that [Plaintiffs] used the proceeds of [their] PPP loan within the applicable parameters.

(ECF 68-9 at 293.)

Finally, the OHA clarified that, under the statutory framework, "[a]pplication for, and receipt of, a PPP loan is a wholly separate process from application for, and receipt of forgiveness of that loan." (*Id.*) Indeed, the two processes are governed by different statutes. (*Id.*); *see* 15 U.S.C. §§ 636(a)(36)(E) (explaining how to calculate maximum PPP loan amount by multiplying "payroll costs" by 2.5), (A) (defining "payroll costs"); § 636m (loan forgiveness). And "eligibility is a prerequisite to reaching the issue of forgiveness (i.e., whether [Plaintiffs] properly used the PPP loan funds), with the caveat that "[f]orgiveness is limited to the maximum eligible loan amount." (ECF 68-9 at 294.)

Thus, the OHA found "no clear error of fact or law in the SBA's determination" of Plaintiffs' loan eligibility and forgiveness amounts of $89,044.96. (*Id.*)

## II

Summary judgment "is appropriate only if, taking the evidence and all reasonable inferences in the light most favorable to the non-moving party, there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law." *Tauscher v. Phx. Bd. of Realtors, Inc.*, 931 F.3d 959, 962 (9th Cir. 2019); Fed. R. Civ. P. 56(a). In APA actions, however, the court's review is based on the

7

1  agency's administrative record.  *See Lujan v. Nat'l Wildlife Fed'n*, 497
2  U.S. 871, 883–84 (1990).  "[T]herefore, resolution of this matter does not
3  require fact finding on behalf of this court.  Rather, the [C]ourt's review
4  is limited to the administrative record . . . ."  *Nw. Motorcycle Ass'n v.*
5  *U.S. Dep't of Agric.*, 18 F.3d 1468, 1472 (9th Cir. 1994).
6       Under the APA, courts "hold unlawful and set aside agency
7  action" if, among other things, the action was "arbitrary, capricious, an
8  abuse of discretion, . . . not in accordance with law[.]"  5 U.S.C.
9  § 706(2)(A).  The scope of review under the 'arbitrary and capricious'
10 standard is narrow and a court is not to substitute its judgment for that
11 of the agency."  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm*
12 *Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  "[T]he function of the
13 district court is to determine whether or not as a matter of law" the
14 agency acted unlawfully.  *Occidental Eng'g Co. v. INS*, 753 F.2d 766,
15 769 (9th Cir. 1985).  Except in limited circumstances not present here,
16 "judicial review of agency action is limited to review of the
17 administrative record."  *Animal Def. Council v. Hodel*, 840 F.2d 1432,
18 1436 (9th Cir. 1988).
19       While a reviewing court must apply this standard deferentially,
20 the agency action must "be reasonable and reasonably explained." *Fed.*
21 *Commc'ns Comm'n Prometheus Radio Project*, 592 U.S. 414, 423 (2021).
22 To assess whether an agency has acted arbitrarily or capriciously, a
23 court should consider whether the agency "has relied on factors which
24 Congress has not intended it to consider, entirely failed to consider an
25 important aspect of the problem, offered an explanation for its decision
26 that runs counter to the evidence . . .  or is so implausible that it could
27 not be ascribed to a difference in view or the product of agency
28 expertise."  *Motor Vehicle Mfrs. Ass'n of U.S., Inc*, 463 U.S. at 43.

### III

Plaintiffs move for judgment on the certified administrative record, and ask the Court to vacate the OHA's decision and "restore Chase's determination" that they are entitled to full forgiveness. (ECF 71 at 11.) Plaintiffs argue that, in failing to (1) "consider Chase's loan eligibility and forgiveness determinations," and (2) "'cogently explain' which 'ineligible expenses' [Plaintiffs] included in [their] original PPP loan application," the "SBA acted arbitrarily and capriciously." (ECF 71 at 4.) The Court disagrees.

### A

First, Plaintiffs contend that "OHA's failure to give any consideration to Chase's determinations" of the $214,162 loan amount, and of entitlement to full forgiveness, "circumvented the CARES act and SBA's own regulations." (ECF 71 at 9.)

Plaintiffs base their argument, in part, on the faulty premise that the loan amount was determined by Chase. The OHA articulated clearly that, under the applicable statutory and regulatory frameworks, Plaintiffs, not Chase, were responsible for providing the numeric inputs that rendered the $214,162 loan amount. (ECF 68-9 at 291–92.) And the loan application, on its face, reflects that Plaintiffs were directed to fill in blank fields representing their average monthly payroll costs, then to multiply that amount by 2.5 to obtain the total loan amount. (ECF 68-4 at 62.) Plaintiffs do not provide any alternative explanation or point to specific documentation to support the $85,665 input on their loan application. They do not challenge substantively their 2019 payroll costs as calculated by the SBA. Nor can Plaintiffs impute to Chase responsibility to have verified independently the payroll cost reported by Plaintiffs to secure the loan. The first IFR authorized

1 lenders to rely on borrowers' certifications of the self-generated loan
2 amounts.  85 Fed. Reg. 20811-01, 2020 WL 1865030, at *20812.  It also
3 states that lenders would "be held harmless for borrowers' failure to
4 comply with program criteria." *Id.*

5     Relatedly, Plaintiffs contend that the SBA failed unlawfully to
6 consider Chase's full-forgiveness recommendation.  (ECF 71 at 9.)  That
7 the SBA's independent review rendered a different result from Chase is
8 not evidence of a failure to consider such.  And Plaintiffs provide no
9 authority tending to show that something more was required.  They
10 seize on a clause in another IFR, which states that, "PPP
11 lenders . . . generally w[ould] make the loan forgiveness determinations,
12 as provided in the CARES Act." (*Id.*); 85 Fed. Reg. 33010-01, 2020 WL
13 2793807, at *33011 (June 1, 2020).  To the extent Plaintiffs thus
14 attempt to argue that Chase's full-forgiveness recommendation divested
15 the SBA of authority to deem otherwise, the Court finds no authority to
16 support such a reading.  As one court has explained, "[t]he mere fact
17 that the CARES Act delegated loan origination decisions to private
18 lenders does not suggest the SBA lacks authority to review those
19 decisions."  *Bruckner Truck Sales, Inc. v. Guzman*, Case No. 2:23-CV-
20 097-Z, 2023 WL 8606761, at *7 (N.D. Tex. Dec. 12, 2023); *see also Noble*
21 *Pub. Adjusting Grp., LLC v. U.S. Small Bus. Ass'n*, 762 F.Supp.3d 1215,
22 1218 (N.D. Fla. Jan. 3, 2025) (holding that the SBA may modify the
23 amount of loan forgiveness when a borrower erroneously includes non-
24 eligible expenses in the maximum loan calculation).  In fact, the
25 regulations contemplate independent SBA review of "loan forgiveness
26 applications that are not reviewed by SBA prior to the lender's decision
27 on the forgiveness application." 85 Fed. Reg. 33004-01, 2020 WL
28 2793806, at *33006 (June 1, 2020).  And, as relevant here,

10

> If SBA determines in the course of its review that the borrower was ineligible for the PPP loan based on the provisions of the CARES Act, SBA rules or guidance available at the time of the borrower's loan application, or the terms of the borrower's PPP loan application *(for example, because the borrower lacked an adequate basis for the certifications that it made in its PPP loan application)*, the loan will not be eligible for loan forgiveness.

(*Id.* (emphasis added).)

Further, to the extent Plaintiffs point to the SBA's purchase of the guaranty to Plaintiffs' PPP loan in full, this argument, too, is unpersuasive. (ECF 71 at 4.) Federal Defendants respond by citing the first IFR, which provides that "[t]he SBA guaranteed loans under the same terms and conditions as other SBA 7(a) program loans with certain borrower and lender friendly exceptions, including that the guarantee percentage was 100% . . . ." (ECF 74 at 4 (citing 85 Fed. Reg. 20811, at *20816).) Thus, the SBA was required to purchase the guarantee in full, 85 Fed. Reg. 20811, at *20816, and could later determine that full forgiveness was not warranted, 85 Fed. Reg. 33004-01, at *33006.

## B

Second, Plaintiffs contend that "OHA failed to cogently explain why [their] PPP loan application was 'incorrect.'" (ECF 71 at 9.) But the SBA articulated and the OHA reiterated that, for the purpose of the PPP loan application, Plaintiffs were directed to multiply by 2.5 only "payroll costs," a term defined expressly by statute. (ECF 68-7 at 178); *see* 15 U.S.C. §§ 636(a)(36)(E), (A). Any non-"payroll costs" were ineligible costs at the loan-application phase. (ECF 68-9 at 293.) And Plaintiffs' "initial calculation for the total eligible amount for the PPP loan at origination was incorrect by including ineligible expenses in the calculation of average monthly payroll." (*Id.*) The OHA further

11

1  specified that Plaintiffs were "required to calculate the maximum loan
2  amount utilizing 2019 IRS forms and payroll documentation." (*Id.*)
3  Thus, to the extent any of the costs Plaintiffs included in the loan-
4  application phase derived from other sources, those, too, were ineligible.
5  Upon reviewing the documentation provided by Plaintiffs in light of this
6  framework, both the SBA and OHA explained that Plaintiffs were only
7  ever eligible for a maximum PPP loan amount of $89,994.46.  (ECF 68-7
8  at 178; ECF 68-9 at 293); *see* 15 U.S.C. §§ 636(a)(36)(E) (explaining how
9  to calculate maximum PPP loan amount by multiplying "payroll costs"
10 by 2.5), (A) (defining "payroll costs").
11       As a separate matter, to obtain forgiveness of the loan, Plaintiffs
12 were required to "use at least 60 percent of the covered loan amount for
13 payroll costs."  15 U.S.C. § 636m(d)(8).  They could still obtain
14 forgiveness in full if they "use[d] up to 40 percent of such amount for
15 any payment of interest on any covered mortgage obligation . . . , any
16 payment on any covered rent obligation, any payment on any covered
17 operations expenditure, any payment on any covered property damage
18 cost, any payment on any covered supplier cost, any payment on any
19 covered worker protection expenditure, or any covered utility payment."
20 (*Id.*)  But, as explained by the OHA, these latter costs were not eligible
21 costs for the purpose of the initial loan calculation.  (ECF 68-9 at 293.)

## C

23       The Court is able to follow the SBA's rationale and finds that the
24 SBA "articulate[d] a satisfactory explanation for its action including a
25 'rational connection between the facts found and the choice made.'"
26 *Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 43 (quoting
27 *Burlington Truck Lines v. United States,* 371 U.S. 156, 168 (1962)).  The
28 SBA considered the evidence submitted by Plaintiffs in light of the

applicable statutes, regulations, and precedent, applied the appropriate standard in determining that Plaintiffs were ineligible for full forgiveness, and reasonably explained its decision.

Accordingly, Plaintiffs have failed to meet their burden of showing that the partial-forgiveness decision was arbitrary and capricious. The Court finds that there are no genuine issues of material fact remaining, and Federal Defendants are entitled to judgment as a matter of law.

## ORDER

**IT IS ORDERED** that Federal Defendants' cross-motion for summary judgment (ECF 72) is **GRANTED**. Plaintiffs' motion for summary judgment (ECF 71) is **DENIED**. The Court will enter judgment by separate order.

DATED: July 17, 2025

HONORABLE STEPHANIE S. CHRISTENSEN
UNITED STATES MAGISTRATE JUDGE